RUDEN, Superintendent of Banks, Appellant, v. HECKEN-LAIBLE, Respondent.

(243 N. W. 95.)

(File No. 7172. Opinion filed June 13, 1932.)

*Van Slyke & Agor,* of Aberdeen, and *H. A. Doyle* and *Frank Biegelmeier,* both of Yankton, for Appellant.

*Williamson, Williamson & Smith,* of Aberdeen, for Respondent.

POLLEY, J. The defendant in this action was the owner of 8⅔ shares of the capital stock of the Exchange State Bank of Menno, of the par value of $100 per share. About the 22d day of October, 1926, the bank levied an assessment of $100 per share on its capital stock, and on said date sent to defendant the following letter:

"The Board of Directors of the Exchange State Bank of Menno, S. D., of which you are a stockholder has levied an assessment of 100% against all the stock and your assessment amounts to $866.66, this is payable on the first of November, if not paid your stock will be sold for the assessment as other delinquent stock. Favor us with a draft of the above amount unless you want to assign your stock, send the assigned certificate.

"Yours very truly,

"E. W. Aisenbrey, Vice President."

On the 29th day of said month defendant in reply to said letter wrote the bank as follows: "The letter of the 22 received stating that I should have a draft there or the assigned certificate by Nov. 1 to pay for the assessment made by the board of directors. * * *"

With this letter defendant returned to the bank his certificate for 8⅔ shares of stock, properly assigned in blank and executed by himself in the presence of a witness. In reply to this letter the bank wrote defendant Exhibit 12, which reads as follows: "Your letter of Oct. 29th, with certificate of stock in Exchange State Bank endorsed in blank, which you voluntary surrendered instead of paying the assessment at hand. The notice was probably a little short in your case, and I do not think that it was intentional. My

impression was that Mr. Aisenbrey had merely written to you what the Board had decided, but since you have sent in the stock, we are willing to give you a fair chance in the proposition. Namely, whoever will pay the assessment for you, and take over the stock, we will make an agreement that in event you will re-imburse the party for the assessment, plus interest at 6% for the time he holds it, we will give you an option to take it back within next six months. Now this is more fair than you ever expected to get, and the assessment was not for the purpose of freezing out any one, but for the best interest of the bank, and for your interest as well as all other stockholders or depositors. The fact that you may not look at it in that way will not change facts any, but time will tell without going into that phase of it now."

The bank retained possession of the said certificate, and made no further attempt to collect the assessment, nor, so far as the record discloses, did the bank from then on give defendant notice of stockholders' meetings or otherwise treat or recognize him as a stockholder of the bank, though it never canceled said certificate of stock nor transferred the same on the books of the bank.

On the 27th day of December, 1927, the bank, being insolvent, was taken over by the superintendent of banks for liquidation. The bank superintendent proceeded under the provisions of section 8993 to collect on the stockholder's liability as provided by that section. Demand was made upon defendant for the face value of the 8⅔ shares of stock standing in the name of defendant on the books of the bank. Defendant refused to pay, and this action was commenced. The case was tried to a jury. Verdict and judgment were for defendant, and plaintiff appeals.

Defendant contends that, after he assigned and delivered his stock certificate to the bank he was no longer a stockholder of the bank, and that he was not liable as a stockholder under the provisions of section 8993, Rev. Code 1919, and whether he was a stockholder after such surrender is the only question to be determined in this case.

The failure on the part of a stockholder to pay a stock assessment levied under the provisions of section 8924, Rev. Code 1919, does not entitle the bank to bring suit or obtain judgment for the amount of the levy. Failure to pay the levy does not create a personal liability. Smith v. Goldsmith, 50 S. D. 1, 207 N. W.

977. In case of failure to pay the levy for a period of ten days after it becomes due, the directors of the bank, or the superintendent of banks, as the case may be, shall on proper notice offer the stock for sale and apply the proceeds thereof to the levy to the extent of the amount of the levy; in other words, the stock may be applied to the payment of the levy. Had the stock been sold under the provisions of section 8924, title would have passed to the purchaser, and defendant would no longer have been the owner thereof, and could not, fourteen months thereafter, have been held personally liable under the provisions of section 8993.

It will be noted that in the letter of October 26, 1926, written by the vice president of the bank, defendant is directed to: "Favor us with a draft of the amount [$866.66] unless you want to assign your stock, send the assigned certificate." Defendant followed this request literally, and contends that by so doing he divested himself of title to the stock, and that the bank became the owner thereof. In support of this contention defendant relies upon the well-recognized rule stated in Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532, as follows: "As between the parties to a sale of stock of a bank, the sale is concluded when the certificate is delivered and the price is paid. It is not necessary, in order to complete the sale, that there be a subsequent transfer of the certificate on the books of the bank."

But this rule assumes two conditions that do not exist in this case: First, an intent on the part of the vendor to transfer the title to the vendee, and an intent on the part of the vendee to accept the title; and, second, that both vendor and vendee have the legal capacity to consummate the sale and transfer of the stock in question. The assignment executed by the defendant is in the following form: "For value received ———— hereby sell, assign and transfer unto ———— shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ———— Attorney to transfer the said stock on the books of the within named corporation with full power of substitution in the premises." No vendee is named, and, from the form of the assignment and the letter from the bank acknowledging receipt of the certificate, it is clear that no title was intended to pass until the stock had been sold by the bank; and until such sale the title would remain in the vendor. But no title could have passed to

the bank, even though both parties had intended an immediate transfer. Section 8983, Rev. Code 1919, prohibits any state bank from purchasing or holding any shares of its own stock, unless it be necessary to prevent loss upon a debt previously contracted in good faith. In this case no debt existed; therefore it was not necessary for the bank to purchase this stock to prevent loss. Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N. W. 577, 8 Am. St. Rep. 643. From this it follows that defendant was still the owner of the stock and liable at the commencement of the action as claimed by the plaintiff, and the court erred in denying plaintiff's motion for a directed verdict as the close of the evidence.

The judgment and order appealed from are reversed.

CAMPBELL, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.